815 So.2d 1074 (2002)
Floyd F. DEGRUISE and Della Chiasson Degruise, Individually and on Behalf of Their Children, Trent Degruise and Trevor Degruise
v.
HOUMA COURIER NEWSPAPER CORPORATION, a New York Times Company, ABC Insurance Company, Diane B. Scott, American National Agents Insurance Company, Federated Rural Electric Insurance Corporation and Louisiana Farm Bureau Mutual Insurance Company
No. 2000 CA 0229.
Court of Appeal of Louisiana, First Circuit.
March 28, 2002.
*1076 Herbert W. Barnes, Houma, for Plaintiffs/Appellees Floyd F. Degruise and Della Chiasson Degruise, individually and on behalf of their children, Trent Degruise and Trevor Degruise.
James E. Diaz, Jr., Gibson-Gruenert, L.L.P., Lafayette, for Intervenor/Appellant Federated Rural Electric Insurance Corporation.
Before: PARRO, FITZSIMMONS, GUIDRY, PETTIGREW, and KLINE,[1] JJ.
PARRO, J.
This appeal involves the determination of the LSA-R.S. 23:1103(A)(1) credit to which an employer is entitled against its future workers' compensation obligation to an employee who recovered damages in a tort suit against a third person.

Factual Background and Procedural History
On December 18, 1990, plaintiff, Floyd Degruise (Degruise) was rear-ended by a vehicle driven by Diane B. Scott (Scott). At the time of the accident, Degruise was occupying a vehicle owned by his employer, South Louisiana Electric Cooperative Association (SLECA), while in the course and scope of his employment. As a result of that accident, Degruise suffered the aggravation of a pre-existing but dormant seizure disorder, which became disabling after the accident. Because Degruise sustained an injury while in the course and scope of his employment, SLECA's workers' compensation insurer, Federated Rural Electric Insurance Corporation (Federated), was called on to pay workers' compensation indemnity and medical benefits to Degruise.
Subsequently, Degruise filed suit against Scott and Federated, but only in its capacity as SLECA's uninsured motorist (UM) insurer.[2] SLECA and Federated, in its capacity as SLECA's workers' compensation insurer, intervened seeking reimbursement for amounts previously paid to Degruise in workers' compensation benefits and a declaration of a future credit pursuant to LSA-R.S. 23:1103.[3] Accordingly, Federated occupied a dual role in *1077 Degruise's tort action: it was SLECA's workers' compensation insurer (Federated-WC), as well as SLECA's UM insurer (Federated-UM).
Degruise's tort suit resulted in a jury verdict and corresponding judgment against Federated-UM for $1,202,000. Degruise was also awarded $120,200 in penalties and $120,200 in attorney fees pursuant to LSA-R.S. 22:658, for Federated-UM's failure to tender funds.[4] In conjunction with their intervention, an amended judgment was rendered against Degruise and Federated-UM and in favor of SLECA and Federated-WC for the stipulated amount of workers' compensation indemnity and medical benefits paid to Degruise, $58,902.59. Additionally, the amended judgment recognized SLECA and Federated-WC's entitlement to a credit against their future compensation obligation in the full amount of Degruise's damage recovery ($1,202,000), subject to a reduction for attorney fees and court costs paid by Degruise in his tort action as directed by LSA-R.S. 23:1103(A)(1).
Subsequently, Degruise filed a motion seeking to recover from Federated-WC a proportionate share of attorney fees and costs incurred by him in his suit against Federated-UM, in accordance with LSA-R.S. 23:1103(C). The trial court's denial of that motion was appealed by Degruise. This court reversed the trial court's ruling and held that Federated-WC was responsible for its proportionate share of the reasonable legal fees and costs by application of LSA-R.S. 23:1103(C). Degruise v. Houma Courier Newspaper Corporation, 95-0013 (La.App. 1st Cir.10/6/95), 694 So.2d 273, 277. However, that decision was reversed by the supreme court.[5]Degruise v. Houma Courier Newspaper Corporation, 95-1863, 95-2675 (La.11/25/96), 683 So.2d 689.
Federated-WC then filed a motion to declare a credit with the district court, seeking a determination of the amount of the credit it could apply against its future workers' compensation obligation. In calculating the amount of such a credit pursuant to LSA-R.S. 23:1103(A)(1), the district court reduced Federated-WC and SLECA's credit by the amount of Degruise's attorney fees ($275,059.53) and litigation costs ($36,202.17), resulting in a total net credit of $415,871.22.
From the judgment granting a future credit of $415,871.22 in its favor, Federated-WC appealed, contending that it was entitled to a greater credit than that recognized by the district court. In essence, it argues that the district court erred in its determination of the amount of its credit by allowing a reduction for the amount of litigation costs of $36,202.17 incurred by Degruise over and above the court costs for which Federated-UM was held responsible and by failing to increase its credit based on the time value of money as directed by LSA-R.S. 23:1103(A)(1).[6] Thus, *1078 the ultimate question presented to this court in Federated-WC's appeal is whether its credit should be more than $415,871.22.[7]

Discussion
LSA-R.S. 23:1101 provides that the payment of compensation does not affect an injured employee's right to claim damages from a third person. Furthermore, the right of an employer to recover workers' compensation payments made to an employee injured in a work-related accident caused by a third person is firmly established in our law. Landry v. Martin Mills, Inc., 98-1395 (La.App. 3rd Cir.3/3/99), 737 So.2d 58, 60, writ denied, 99-0957 (La.6/4/99), 744 So.2d 625. LSA-R.S. 23:1101(B) specifically provides for a right in one who has paid compensation benefits to an injured employee to bring suit against the third person, who has caused the injury, to recover any amount which he has paid or becomes obligated to pay as workers' compensation to such employee. Therefore, an employer can recover the amount it has paid in workers' compensation benefits to its injured employee from the third person who is actually responsible for the damages incurred. Landry v. Martin Mills, Inc., 737 So.2d at 60. Because the employer's UM insurer is obligated to repair damage caused by an uninsured or underinsured motorist, an employer's UM insurer is a "third person" legally liable to pay an employee damages resulting from a work-related automobile accident. Johnson v. Fireman's Fund Insurance Company, 425 So.2d 224, 227 (La. 1982). Thus, an employer's UM insurer is a "third person" from whom an employer or its workers' compensation insurer can recover reimbursement of benefits paid to the injured employee. Travelers Insurance Company v. Joseph, 95-0200 (La.6/30/95), 656 So.2d 1000, 1003.
In the event damages are recovered from a third person in a suit filed by either the employee or the employer, the damages shall be apportioned so that the employer's claim for workers' compensation actually paid shall take precedence over that of the injured employee; but if the damages are more than sufficient to reimburse the employer, the excess shall be assessed in favor of the employee. LSA-R.S. 23:1103(A)(1). When this excess is paid to the employee, the employer is entitled to a credit of such an amount against workers' compensation benefits it will become obligated to pay in the future.[8] LSA-R.S. 23:1103(A)(1). The employer is entitled to suspend weekly indemnity and medical benefits until such time as the credit is exhausted. Landry v. Martin Mills, Inc., 737 So.2d at 60. In essence, LSA-R.S. 23:1103(A)(1) precludes double recovery by the injured employee. See Labruzzo v. Employers Insurance of Wausau, 521 So.2d 515, 522 (La.App. 4th Cir.), *1079 writ denied, 523 So.2d 1342 (La.1988). Thus, this court concludes that the fact that SLECA purchased its UM insurance and its workers' compensation insurance from the same insurance company would not preclude the recognition of a credit against its future workers' compensation obligation as provided in LSA-R.S. 23:1103(A)(1); to rule to the contrary would be to allow double recovery in favor of Degruise, which is generally prohibited by law.

A. Court Costs

Having established that Federated-WC was legally entitled to a credit against its future workers' compensation obligation, we must decide if the district court erred in reducing the credit to which Federated-WC was entitled by the amount of Degruise's "litigation costs."[9] A review of the history relative to the employer/workers' compensation insurer's obligation to contribute to the costs of litigation or recovery against the third person may prove helpful in analyzing this issue.
In Moody v. Arabie, 498 So.2d 1081 (La.1986), the supreme court recognized that the workers' compensation law was silent on the subject of who was obliged to pay the costs of litigation or recovery against the third person.[10] Applying co-ownership principles, the Moody v. Arabie court concluded that the necessary and reasonable costs of recovery should be apportioned between the employee and the employer according to their interests in the recovery. Moody v. Arabie, 498 So.2d at 1086. According to Moody v. Arabie, the employer was liable for the recovery costs attributable to its reimbursement of compensation actually paid. Additionally, the court recognized that when the employer received the benefit of a credit against future compensation, it should be made to bear that proportion of the recovery costs which related to the present value of its probable future compensation liability. Moody v. Arabie, 498 So.2d at 1087.
The "costs of recovery" were defined by the court as the necessary and reasonable expenditures and obligations, including those for attorney fees, incurred in effecting recovery. Moody v. Arabie, 498 So.2d at 1086. To qualify as a reasonable and necessary cost of recovery, however, the fee must relate to necessary services which actually benefited or augmented recovery from the third person, rather than duplicative services or those designed to benefit a single party, such as the mere monitoring of proceedings. Moody v. Arabie, 498 So.2d at 1086-1087.
In the aftermath of Moody v. Arabie, the legislature passed 1989 La. Acts, No. 454, § 4, effective January 1, 1990, which amended LSA-R.S. 23:1103 to provide:
A. (1) In the event that the employer or the employee or his dependent becomes party plaintiff in a suit against a third person, as provided in R.S. 23:1102, and damages are recovered, such damages shall be so apportioned in the judgment that the claim of the employer for the compensation actually paid shall take precedence over that of *1080 the injured employee or his dependent; and if the damages are not sufficient or are sufficient only to reimburse the employer for the compensation which he has actually paid, such damages shall be assessed solely in his favor; but if the damages are more than sufficient to so reimburse the employer, the excess shall be assessed in favor of the injured employee or his dependent, and upon payment thereof to the employee or his dependent, the liability of the employer for compensation shall cease for such part of the compensation due, computed at six percent per annum, and shall be satisfied by such payment. The employer's credit against its future compensation obligation shall be reduced by the amount of attorney fees and court costs paid by the employee in the third party suit.
(2) No compromise with such third person by either the employer or the injured employee or his dependent shall be binding upon or affect the rights of the others unless assented to by him.
B. The claim of the employer shall be satisfied in the manner described above from the first dollar of the judgment without regard to how the damages have been itemized or classified by the judge or jury. Such first dollar satisfaction shall be paid from the entire judgment, regardless of whether the judgment includes compensation for losses other than medical expenses and lost wages.
C. If either the employer or employee intervenes in the third party suit filed by the other, the intervenor shall only be responsible for reasonable legal fees and costs incurred by the attorney retained by the plaintiff. Such reasonable legal fees shall not exceed one third of the intervenor's recovery for pre-judgment payments or pre-judgment damages. The employee as intervenor shall not be responsible for the employer's attorney fees attributable to post-judgment damages nor will the employer as intervenor be responsible for the attorney fees attributable to the credit given to the employer under Paragraph A of this Section.
The 1990 version of section 1103 was in effect at the time of Degruise's accident. Although intended as a codification of the principles enunciated in Moody v. Arabie, this court notes several differences in the terminology used by the court in Moody v. Arabie and by the legislature in amending LSA-R.S. 23:1103(A)(1) and adding LSA-R.S. 23:1103(C) relative to the employer's responsibility for the costs of litigation or recovery against the third person.
The court in Moody v. Arabie spoke in terms of costs of recovery, that is, the necessary and reasonable expenditures and obligations, including those for attorney fees, incurred in effecting recovery. On the other hand, relative to workers' compensation benefits actually paid, LSA-R.S. 23:1103(C) provided that the employer, as intervenor, was responsible for reasonable legal fees and costs incurred by the employee.[11] The terms "reasonable legal fees" and "costs" as used in this subsection were not defined by the legislature in 1989. In contrast, regarding the employer's credit against its future workers' compensation obligation recognized by LSA-R.S. 23:1103(A)(1), the legislature mandated a reduction in the credit by the amount of attorney fees and court costs paid by the employee in the third party suit. No definition for the term "court costs" as used in this subsection was provided by the legislature in 1989.
*1081 Its choice of words with respect to these provisions suggests that the legislature did not intend to make the employer responsible for its proportionate share of the costs of recovery as defined by Moody v. Arabie with respect to the excess assessed in favor of the employee under LSA-R.S. 23:1103(A)(1). Although subsection (C) obligated the employer for reasonable legal fees and costs with respect to compensation payments already paid, the employer's credit relative to its future compensation obligation was subject to reduction under subsection (A)(1) only for attorney fees and court costs. Arguably, the term "costs" as used in subsection (C) includes something more than "court costs" as referred to in subsection (A)(1), and may be synonymous to costs of recovery as defined by the supreme court in Moody v. Arabie.[12] By its modification of the addition of the term costs in subsection (A)(1) with the term court, we conclude that the legislature did not intend to reduce the employer's credit against its future compensation obligation by all of the necessary and reasonable expenditures and obligations incurred by the employee in effecting recovery, as suggested by Moody v. Arabie.
LSA-R.S. 23:1317(B) provides that when awarded, costs may be allowed, taxed, and collected as in other civil proceedings. The only costs taxable against a litigant are those provided for by positive law. Delaney v. Whitney National Bank, 96-2144, 97-0254 (La.App. 4th Cir.11/12/97), 703 So.2d 709, 720, writ denied, 98-0123 (La.3/20/98), 715 So.2d 1211. Under LSA-R.S. 13:3666 and 13:4533,[13] as well as LSA-C.C.P. art.1920, the trial judge has great discretion in awarding costs, including expert witness fees, deposition costs, exhibit costs, and related expenses. Samuel v. Baton Rouge General Medical Center, 99-1148 (La.App. 1st Cir.10/2/00), 798 So.2d 126, 131-132, writs denied, 00-1314 and 00-1329 (La.6/23/00), 765 So.2d 1044 and 1066, citing Bourgeois v. Heritage Manor of Houma, 96-0135 (La.App. 1st Cir.2/14/97), 691 So.2d 703, 706. The following are litigation costs that would not be allowable as court costs because they are outside the scope of LSA-R.S. 13:4533: duplication costs of various documents and medical reports not used on the trial, postage, and telephone charges, as well as plaintiff's food and lodging during the trial. See Dupre' v. Maison Blanche, Inc., 97-0652 (La.App. 1st Cir.4/8/98), 712 So.2d 567, 572, writ denied, 98-1239 (La.6/19/98), 721 So.2d 471.
Accordingly, we conclude that the district court legally erred to the extent that it allowed reduction of Federated-WC's credit against its future workers' compensation obligation by items not allowable as court costs. In its capacity as SLECA's UM insurer, Federated-UM was ordered to pay all court costs, thus relieving Degruise of such an obligation. Having paid no "court costs" in the third party suit, Degruise was not entitled to have Federated-WC's future workers' compensation obligation reduced by that amount. See LSA-R.S. 23:1103(A)(1). Therefore, we hold that Federated-WC's credit should be increased by $36,202.17, which represents *1082 Degruise's litigation costs in excess of court costs.

B. Six Percent Per Annum

In pertinent part, LSA-R.S. 23:1103(A)(1) provides that upon payment of the excess to the injured employee, "the liability of the employer for compensation shall cease for such part of the compensation due, computed at six percent per annum, and shall be satisfied by such payment." (Emphasis added.) Based on this language, Federated-WC argues that its net credit is subject to an increase of six percent per year to reflect the time value of money relative to the excess which is in the hands of Degruise.[14] Contrarily, Degruise maintains that the statute as written increases the calculation of the future compensation due by six percent per year, thereby decreasing the credit to which the employer is entitled. In other words, Degruise contends that each future payment for which the employer is credited should be increased by six percent per year as each payment is due.[15]
Federated-WC speaks in terms of an increase to the net credit to which the employer is entitled. However, the clear wording of the statute reveals that the six percent interest factor relates to the "compensation due" owed by the employer. The statute envisions the creation of a fictitious fund in which compensation, as it becomes due, accumulates in favor of the employer, who has been relieved of paying such benefits, until the excess, which has been paid to the employee, has been exhausted. In light of the relief afforded to the employer during that time period, the employer has those funds, which it otherwise would have been legally obligated to pay to the employee, available for its use or investment. In exchange for such a benefit, the legislature mandated that a growth factor of six percent per annum be considered in determining when the employer's credit has been exhausted.[16] Accordingly, based on a strict reading of LSA-R.S. 23:1103(A)(1) and being mindful of the doctrine of liberal interpretation which favors the employee,[17] we are unable to find error, legal or otherwise, in the trial court's conclusion that the credit to which the employer is entitled is to be reduced by such part of the compensation as it becomes due, as well as six percent *1083 per annum on the cumulative sum of such compensation beginning as of the time such compensation would ordinarily be due and payable but for the credit provided by LSA-R.S. 23:1103(A)(1). Cf. Vallere v. Nicor Exploration Company, 512 So.2d 514 (La.App. 3rd Cir.1987).[18]

Decree
For the foregoing reasons, the judgment of the district court recognizing a credit against Federated-WC's future workers' compensation obligation in the amount of $415,871.22 is amended to increase such amount to $452,073.39, subject to reduction by six percent per annum on the cumulative sum of such part of the compensation due beginning as of the time such compensation became due. All costs of this appeal are assessed to Federated Rural Electric Insurance Corporation in its capacity as South Louisiana Electric Cooperative Association's workers' compensation insurer.
AMENDED, AND AS AMENDED, AFFIRMED.
GUIDRY, J., dissents and assigns reasons.
GUIDRY, J., dissenting.
The Supreme Court has already held that La. R.S. 23:1103C is inapplicable in this matter. Degruise v. Houma Courier Newspaper Corporation, 95-1863, 95-2675 (La.11/25/96), 683 So.2d 689. The decision was based on a finding that Federated is not a third party within the contemplation of the statute and the effect is that Federated is relieved of responsibility for payment of a pro-rata share of attorney's fees and the costs incurred by Mr. Degruise in obtaining the judgment in his tort suit.
A reading of the entire statute together reveals that the credit on future obligations provided by section 1103A(1) contemplates a third party employer/insurer who has borne or will bear a pro-rata share of attorney's fees and litigation costs pursuant to 1103C. Because this pro-rata share of litigation costs is mandated by application of section C, section A mandates a reduction of the employer's credit to the extent of the remaining costs incurred by plaintiff, "court costs."
Because of the interplay between the two sections of the statute, and the Supreme Court's ruling that 1103C is inapplicable in this matter, I believe that we are constrained to find that 1103A is, likewise, inapplicable. Therefore, I believe that the trial court erred as a matter of law in applying the statute and granting Federated's motion to declare credit. Accordingly, the judgment of the trial court granting the credit and reducing said credit by attorney's fees and costs should be reversed. Therefore, I respectfully dissent from the majority opinion in this matter.
NOTES
[1] Judge William F. Kline, Jr., retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] Although various other parties were named as defendants in Degruise's original petition, the issues involving those parties were resolved prior to trial. Scott's liability insurer afforded insurance coverage. Degruise settled with Scott and her insurer prior to trial. Scott's liability insurer was subsequently placed in liquidation, and Louisiana Insurance Guaranty Association (LIGA) was substituted as a party. By way of a judgment dated February 4, 1994, the trial court ordered Degruise to exhaust the available UM coverage first, before proceeding against LIGA for the settlement amount. Thus, the matter proceeded to trial only against Federated in its capacity as UM insurer.
[3] All references in this opinion to LSA-R.S. 23:1103 are to the version of this law as it existed at the time of the accident.
[4] The judgment also awarded additional sums to Degruise's wife and two minor children for their losses of consortium, together with penalties and attorney fees for each of these parties.
[5] Additionally, the supreme court reduced the awards for damages, penalties, and attorney fees as to all of the plaintiffs.
[6] In pertinent part, the judgment provided:

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that for the purposes of reducing and/or computing the time within which the credit will be satisfied, and disability benefits and medical expenses may again be payable to Floyd F. Degruise by South Louisiana Electric Cooperative Association and/or Federated Rural Electric Insurance Corporation, the credit of $415,871.22 is to be reduced by not only those indemnity and weekly benefits otherwise payable from the time that the credit was begun to be taken, but the future credit of $415,871.22 is also to be reduced by the amount of interest to be computed at 6% per annum on the sum of those disability and medical expense benefits beginning as of the time such payments would ordinarily be due and payable, but for the credit provided hereinabove.
[7] With respect to the district court's judgment recognizing Federated-WC's right to a credit in the amount of $415,871.22, Degruise has filed neither an appeal nor an answer to Federated-WC's appeal. He simply disputes Federated-WC's appeal by arguing that the district court's determinations regarding the calculation of Federated-WC's credit against its future workers' compensation obligations were correct.
[8] The intervening workers' compensation insurer is entitled to a credit for all sums it may come to owe to, or on behalf of, the injured party up to the extent of payment of the tort recovery to the injured party. Billeaud v. United States Fidelity & Guaranty Company, 349 So.2d 1379, 1385 (La.App. 3rd Cir.1977).
[9] Notwithstanding the supreme court's ruling in Degruise v. Houma Courier Newspaper Corporation, 683 So.2d 689, Federated-WC does not dispute Degruise's right under LSA-R.S. 23:1103(A)(1) to have Federated-WC's future credit reduced by the attorney fees and "court costs" actually paid by Degruise.
[10] Prior to the 1989 amendment, LSA-R.S. 23:1103(A) simply recognized the employer's right to a credit against its future compensation obligation to the extent of the employee's recovery in excess of the amount needed to reimburse the employer for the compensation actually paid. See 1958 La. Acts, No. 109, § 1.
[11] The employer's liability for reasonable legal fees was not to exceed one-third of its recovery for pre-judgment payments. LSA-R.S. 23:1103(C).
[12] In 1997, the legislature made it clear that the term costs as used in present subsection (C)(1) includes taxable court costs and the fees of experts retained by the plaintiff. See 1997 La. Acts, No. 1354, § 1, effective July 15, 1997.
[13] LSA-R.S. 13:4533 defines "costs" as the costs of the clerk, sheriff, witness' fees, costs of taking depositions and copies of acts used on the trial, and all other costs allowed by the court.
[14] In essence, Federated-WC's argument is based on the premise that the original excess (credit) is reduced by the periodic compensation payments that would have been paid by the employer had it not been for the excess, and then after each fictitious periodic payment, the six percent interest factor would be applied to the unexhausted balance of the excess. The amount of interest derived by this calculation would be added to the unexhausted balance, thereby resulting in a net credit to the employer. This mathematical process would be repeated until the entire excess was exhausted, at which time the employer's obligation to pay compensation would commence again, if necessary.
[15] In essence, Degruise's position is based on the premise that as each periodic compensation payment becomes due, the employer is credited with the amount of such payment, even though no such payment is actually made. However, the employer has the use of the money it would have paid had it not been for the excess, and therefore, the six percent interest factor should be applied to each payment as it would have become due. This mathematical process would be repeated until the cumulative sum of such payments, plus interest, equals the amount of the original excess. At this point in time, the employer's obligation to pay compensation would commence again, if necessary.
[16] See 1920 La. Acts, No. 247, § 1; see also Chauvin v. Louisiana Power & Light Co., 177 La. 193, 148 So. 23, 26-27 (1933).
[17] See Jonise v. Bologna Brothers, 00-0485 (La.App. 1st Cir.9/28/01), 809 So.2d 352, 355, quoting Lester v. Southern Casualty Insurance Company, 466 So.2d 25, 28 (La.1985).
[18] In Vallere v. Nicor Exploration Company, the court found that the employer was entitled to an equitable credit against liability for future workers' compensation benefits computed at six percent per annum. In so holding, the court determined that in addition to its calculated credit, the employer was entitled to six percent per annum on the unexhausted balance until the entire credit was so exhausted. Vallere v. Nicor Exploration Company, 512 So.2d at 519. For the reasons set forth in this opinion, we disagree with the holding of Vallere v. Nicor Exploration Company in this regard.